**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN CORBY, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 3:04-CV-2523 |
| v. | : | |
| SCRANTON HOUSING AUTHORITY and its Executive Director, DANIEL E. BAKER, in his official capacity, | : | (JUDGE CAPUTO) |
| Defendants. | : | |

## MEMORANDUM

______Presently before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) I will grant the motion because I find that there is a likelihood of success on the merits, there is a risk of irreparable harm to the Plaintiffs if the injunction were not issued, there is no risk of irreparable harm to the Defendants if I issue the injunction, and the public interest is served by issuance of the injunction. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. _

## FACTUAL BACKGROUND

The facts of this case are undisputed. The Scranton Housing Authority (hereinafter Housing Authority) owns and operates low income housing for residents of Scranton, Pennsylvania, including the Washington Plaza Apartments (hereinafter Washington Plaza). The Housing Authority receives funds from the United States Department of Housing and Urban Development (hereinafter HUD). For several years, the Housing Authority has planned to renovate and modernize Washington Plaza. They sought out and received funds from HUD to perform the modernization. The Housing Authority included the modernization in their five year plan. The plan called for all

residents to vacate Washington Plaza, thus permitting all buildings to be renovated simultaneously. Residents could choose to moved to other Housing Authority developments, Section Eight housing, or private residencies. The Housing Authority offered to compensate residents for the relocation. The plan further called for new residents to move into the units after they were reopened. On or about October 6, 2004, the Housing Authority sent residents a letter informing them that they had ninety days to begin relocation. The same letter informed residents that information on relocation options and available housing could be received from a person on site at Washington Plaza. Residents had already begun moving out by the time the action was filed.

On November 19, 2004, Plaintiffs filed an Emergency Complaint against the Scranton Housing Authority and its Executive Director, David Baker, in his official capacity. (Doc. 1.) The complaint alleged that the renovation plan violated the Uniform Relocation Assistance Act, 42 U.S.C. § 4601, *et seq.*, as well as the federal regulations governing HUD funded projects, 24 C.F.R. § 968.105, *et seq.*, and the Due Process clause of the Fourteenth Amendment. On November 19, 2004, I held a hearing on the Motion for Temporary Restraining Order and Preliminary Injunction. After hearing testimony from both sides, I conditionally certified the class and issued a temporary restraining order enjoining the Housing Authority from moving residents out of Washington Plaza. (Doc. 6.) I scheduled a hearing on the preliminary injunction for December 1, 2004, (*id.*) but it was canceled because the parties informed the Court that a settlement was forthcoming (Docs. 10 & 11). After several months of negotiations, the parties informed the Court that settlement was not possible. (Doc. 22.) I held a hearing on the preliminary injunction on April 18, 2005. Prior to the hearing, the parties submitted

legal memoranda. (Docs. 30 & 32.) The motion is now ripe for disposition.

## DISCUSSION

There are two issues presently before the Court: whether I should certify the class for purposes of this action, and whether I should grant a preliminary injunction. I will address each of these in turn.

### A. Class Certification

At the November 19, 2004 hearing, I conditionally certified the class. Now, I will revisit the issue to determine whether the class should be certified for the purposes of this litigation. Class relief is appropriate when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for class certification. To be certified, a putative class must first satisfy the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); FED. R. CIV. P. 23(a). In addition, a plaintiff seeking class certification must show the action is maintainable under Rule 23(b) (1), (2), or (3). *Id.* at 614.

For purposes of class certification, the Court does not consider the merits of the plaintiff's claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Rule 23 is given liberal rather than restrictive construction. *See In re A.H. Robins Co.*, 880 F.2d 709 (4th Cir. 1989). The "interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *In re Flat*

*Glass Antitrust Litig.*, 191 F.R.D. 472, 476 (W.D. Pa. 1999) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)). The ultimate burden, however, is on the plaintiff to demonstrate that a class should be certified. *See Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974).

______A class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "The question of what constitutes [numerosity] . . . depends on the particular facts of each case and no arbitrary rules regarding the size of classes have been established by the courts." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (1986). In the present case, Washington Plaza contains sixty units. Of these units, fifty to fifty-five families lived in the units when the modernization planning began. Thus, I find that the potential plaintiffs are numerous enough.

______The commonality requirement states that there must be "questions of law or fact common to the class." Rule 23(a)(2). This requirement does not mean that every question must be common to the entire class. *See Weiss v. York Hosp.*, 745 F.2d 786, 809 (3d Cir. 1984); *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980). In the present case, the conduct in question is the manner in which the Scranton Housing Authority planned and intends to execute the modernization of Washington Plaza. Thus, the legal issues as they relate to the individual plaintiffs are identical.[1]

______"Typicality entails an inquiry into whether the named plaintiffs' individual

---

[1] The Court notes that some of the class members have relocated from the complex, while others are still living there. It is possible that this distinction may have implications at later stages of the litigation, but it is not significant enough to outweigh the commonalities that the class members share.

circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 598 (M.D. Pa. 1997) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)). Although typicality measures the sufficiency of the named plaintiffs, it does not require that "all putative class members share identical claims." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Rather, the typicality requirement is intended "to screen out class actions involving legal or factual positions of the class representative which are markedly different from those of other class members." *Reilly*, 965 F. Supp. at 600 (quoting *Liberty Lincoln Mercury v. Ford Marketing*, 149 F.R.D. 65, 77 (D.N.J. 1993)). In the present case, the named Plaintiffs represent a large cross-section of the residents of the complex. They are mothers rearing children, people caring for elderly parents, people suffering from ongoing medical conditions which require frequent hospital visits, people who work, and people who rely upon public transportation. Thus, I find the typicality requirement is met.

______Last is the question of adequacy of representation. This requirement actually encompasses two factors. First, "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 630 (3d Cir. 1996). I find that this requirement has been met. Plaintiffs are seeking to enforce their rights of relocation assistance and participation provided under the applicable statutes and regulations. The second component of Rule 23(a)(4) is that "class counsel must be qualified and must serve the interests of the entire class." *Id.* at 630. After observing Plaintiffs' counsel in two hearings and *in camera* meetings, and after reviewing

the filings before the Court, I am satisfied that Plaintiffs' counsel is capable of providing adequate legal representation and will serve the interests of the entire class.

Thus, I find that the putative class meets all of the requirements for class certification. I will certify the class of residents of Washington Plaza who resided there since the Housing Authority's initiation of negotiations with HUD for modernization funding.

**B. Preliminary Injunction**

"The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharms., Inc. v. Andrx Corp*., 369 F.3d 700 (3d Cir. 2004).

In the present case, the success on the likelihood on the merits is clear. Defendants concede that they failed to provide residents with participation required under the HUD regulations. In particular, Plaintiffs presented evidence that Defendants failed to give residents adequate notice of the planned renovations during the planning stages, failed to involve the residents and did not include them in the creation of goals, needs, strategies, and priorities for the project, and failed to have resident participation in the decision-making process to determine that relocation was necessary. In addition, Plaintiffs presented evidence that Defendants violated the Uniform Relocation Assistance Act. Specifically, Plaintiffs presented evidence that Defendants failed to provide comparable replacement housing as part of the relocation and failed to provide the full range of options for compensation for the relocation.

Similarly, the likelihood of harm to the Plaintiffs is clear. At the time the case was filed, Defendants were in the process of moving residents out of Washington Plaza. Once residents leave Washington Plaza, they lose certain rights to contest Defendants' actions. In addition, Defendants' failure to have Plaintiffs meaningfully participate in the planning is a harm that cannot be undone once the lack of participation occurs. Thus, an injunction requiring participation will prevent future harm.

Defendants contend that there is no longer a risk of irreparable harm because they have stopped the renovation plans. At the hearing, Defendants explained to the Court that they intend to reinvestigate the options they have for renovations and then permit the residents to comment on the new proposed plan. While I do not doubt Defendants' intention to engage the residents, I do not believe that the Defendants' representations to the Court eliminate all possible injuries. In most recent hearing, Defendants talked about conducting studies and then notifying residents of the decisions. However, the duty to have resident participation begins from the point that a housing authority receives HUD money. 24 C.F.R. § 968.315. It is unchallenged that Defendants have received HUD money for modernization. Thus, no actions can be taken at this point, including no decision-making or planning, without meaningful resident participation. Therefore, it is clear to the Court that even now Defendants' current plan will continue to cause harm to Plaintiffs.

Furthermore, even if Defendants' stated intentions were compliant with the applicable statutes and regulations, the unilateral actions of a Defendant cannot moot a case easily. The burden is upon Defendants to show not only that they have ceased activities, but that they will not reinitiate the illegal activities in the future. *Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Servs*., 528 U.S. 167, 189 (2000). I find in the current situation that Defendants have not met their burden. Thus, the dispute is not moot.

As for the third prong of the test for a preliminary injunction, potential harm to Defendants, I find that Defendants would suffer no irreparable harm from the issuance of an injunction. Defendants have openly admitted that they have voluntarily postponed the renovation project. Thus, an injunction requiring that action will cause no harm. Furthermore, Defendants have certain legal obligations to the Plaintiffs under the Uniform Relocation Assistance Act and the federal regulations. An injunction requiring Defendants to follow those laws and regulations presents no additional burden upon Defendants.

The last prong of the test for a preliminary injunction is whether the public interest is served. It is the Court's opinion that the public interest is always served when parties are required to comply with the laws. In addition, there is a strong public interest is providing protection against relocation from one's home, particularly when the affected population is composed of low-income individuals who rely upon government services to provide affordable, safe housing.

**CONCLUSION**

I will certify the class because they demonstrate the necessary numerosity, typicality, commonality, and adequacy of representation. I find that there is a likelihood of success on the merits, there is a risk of irreparable harm to the Plaintiffs if the injunction were not issued, there is no risk of irreparable harm to the Defendants if I issue the injunction, and the public interest is served by issuance of the injunction. Therefore, I will grant Plaintiffs' motion for Preliminary Injunction.

An appropriate Order follows.

June 7, 2005
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN CORBY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SCRANTON HOUSING AUTHORITY and its Executive Director, DANIEL E. BAKER, in his official capacity,<br><br>Defendants. | : | CIVIL ACTION NO. 3:04-CV-2523<br><br>(JUDGE CAPUTO) |

**ORDER**

**NOW**, this 7th day of June, 2005, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **GRANTED**:

(1) I hereby **CERTIFY** the class of plaintiffs comprised of the individuals who resided at the Washington Plaza Apartments since the Scranton Housing Authority began negotiations with the United States Department of Housing and Urban Development for modernization funding. Any persons withdrawn from the class up to this point shall remain withdrawn from the class.

(2) Defendants are hereby **ENJOINED** from relocating or displacing any residents of Washington Plaza Apartments until such time as they comply with the Uniform Relocation Assistance Act and the regulations governing funding from the United States Department of Housing and Urban Development for modernization of public housing.

(3) Defendants shall notify and provide Class members the right to reside at

Washington Plaza Apartments after the completion of any renovations.

(4) Defendants shall take all steps feasible to minimize the temporary displacement of Class members from Washington Plaza Apartments during the renovation period.

(5) Defendants shall notify and provide Class members the right to participate in a process which ensures that Class members are involved in a meaningful way in all phases of modernization planning and implementation, including decisions regarding the feasibility of conducting the renovations with onsite relocation only or with partial onsite relocation, in order to recognize the hardships associated with displacement and relocation and develop solutions thereto. This resident participation process shall meet the standards and procedures set forth at 42 U.S.C. § 4625(a), 49 CFR § 24.205(a) and 24 CFR Part 968 which shall the include the following:

a. Defendants shall provide Plaintiff Class counsel with all information relevant to any proposed renovation and relocation. If any information is not provided to Plaintiff Class counsel, such information may not be relied upon by the Defendants to determine the feasibility of conducting renovations with onsite relocation only or with partial onsite relocation;

b. Class members may utilize a consultant to evaluate the feasibility of conducting renovations with onsite relocation only or with partial onsite relocation. Defendants shall provide for the reasonable cost

of such technical assistance as an eligible management improvement cost from the Capital Grant awarded to the Defendants;

c. Defendants shall carry out the resident participation process by conducting meetings with Class members; and,

d. Defendants shall arrange for a record of the proceedings to be established.

(6) Defendants shall notify and provide Class members the full range of the moving options, relocation payments and advisory services to which they are entitled by law.

(7) Defendants shall notify and provide Class members the right to participate in a hearing consistent with due process to protect against the erroneous deprivation of their vested property interest to continued occupancy at Washington Plaza.

(8) Defendants shall notify and provide Class members who have already moved from Washington Plaza Apartments of the option to immediately return to the property, moving expenses to be paid by the Defendants.

(9) The Temporary Restraining Order issued November 19, 2004 and the amendment of December 16, 2004 are hereby vacated and replaced by this Order. In the cases of Daveen Coello and Mildred Reyes, members of the Plaintiff Class who had already relocated prior to the Order of November 19, 2004, IT IS HEREBY ORDERED that the Order of November 19, 2004 and this Order shall not prevent the finalization of these two moves by the Defendants, provided, however, that these two class members shall not be

prejudiced as a result of their moving as to any rights, protections or benefits should the Plaintiffs prevail in this litigation.

The Court shall retain jurisdiction as necessary and appropriate to enforce and implement this Order.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge