IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN CORBY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:04-CV-2523 |
| v. | (JUDGE CAPUTO) |
| SCRANTON HOUSING AUTHORITY and its EXECUTIVE DIRECTOR, DAVID E. BAKER, in his official capacity, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Joseph Pilchesky's Motion for Intervention in the above-captioned action (Doc. 82-1) and Complaint for Declaratory Judgment and Petition for Injunctive Relief (Doc. 83-1).  For the reasons set forth below, Mr. Pilchesky's motion will be denied, and his complaint and petition will be dismissed without prejudice.

## **BACKGROUND**

The facts of the underlying case are undisputed.  The Scranton Housing Authority ("Housing Authority") owns and operates low income housing for residents of Scranton, Pennsylvania, including the Washington Plaza Apartments ("Washington Plaza").  The Housing Authority receives funds from the United States Department of Housing and Urban Development ("HUD").  For several years, the Housing Authority has planned to renovate and modernize Washington Plaza.  The Housing Authority sought out and received funds from HUD to perform the modernization, and included such modernization in its five year plan.  This plan called for all residents of Washington Plaza to vacate their apartments, thus permitting all buildings to be renovated and modernized simultaneously.

Residents could choose to move to other Housing Authority developments, Section Eight housing, or private residences.  The Housing Authority offered to compensate residents for the relocation.  The plan further called for new residents to move into the units after they were reopened.  On or about October 6, 2004, the Housing Authority sent residents a letter informing them that they had ninety (90) days to begin relocation.  The letter also explained that information on relocation options and available housing could be obtained from a person on-site at Washington Plaza.  Residents had already begun moving out by the time the underlying action was filed. (Doc. 47.)

On November 19, 2004, residents of Washington Plaza filed an Emergency Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction against the Housing Authority and its Executive Director, David Baker. (Doc. 1.)  The complaint alleged that the renovation plan violated the Uniform Relocation Assistance Act, 42 U.S.C. § 4601, *et seq*., as well as the federal regulations governing HUD funded projects, 24 C.F.R. § 968.105, *et seq*., and the Due Process Clause of the Fourteenth Amendment.  On this same date, this Court held a hearing on the Motion for Temporary Restraining Order and Preliminary Injunction.  After hearing testimony from both sides, the Court conditionally certified the plaintiffs as a class and issued a temporary restraining order enjoining the Housing Authority from displacing residents of Washington Plaza. (Doc. 6.)  A hearing on the motion for a preliminary injunction was initially scheduled, but was continued to a later date with the hope that the parties would reach a settlement. (Docs. 10 and 11.)  After several months of negotiations, the parties informed the Court that settlement was not possible. (Doc. 22.)

A hearing on the preliminary injunction was then held on April 18, 2005.  On June 7, 2005, the Court certified the class of residents of Washington Plaza who resided there since the Housing Authority's initiation of negotiations with HUD for modernization funds ("Class Plaintiffs"). (Doc. 47.)  The Court also granted plaintiff-residents' motion for a preliminary injunction, enjoining the Housing Authority from relocating or displacing any residents of Washington Plaza until such time as the Housing Authority complies with the Uniform Relocation Assistance Act and the federal regulations governing HUD-funded projects. *Id.*

On September 2, 2005, Class Plaintiffs filed a Motion for Temporary Restraining Order and Supplemental Preliminary Injunction, seeking to enjoin the Housing Authority from filling vacant apartments at Washington Plaza. (Doc. 49-1.)  On September 7, 2005, a hearing was held on the motion, at which both parties presented testimony. (Doc. 52.)  The next day, the Court granted Class Plaintiffs' motion, enjoining the Housing Authority from filling vacant apartments at Washington Plaza. (Doc. 55.)  Upon motion by Class Plaintiffs, on May 25, 2006, the Court entered a permanent injunction to the same effect as its prior temporary restraining order and preliminary injunctions. (Doc. 70.)

On August 30, 2006, Class Plaintiffs and the Housing Authority jointly moved the Court to amend its May 25, 2006 Order. (Doc. 78-1.)  In their joint motion, the parties explained that, in May of 2006, Mr. Paul S. Smola, Director of Architecture for KBA Engineering, P.C., the architectural and engineering firm hired by the Housing Authority to perform Phase I of the Housing Authority's renovation project for Washington Plaza, notified the Housing Authority by letter that potential building code violations existed at Washington Plaza related to the lack of fire protection systems. (Doc. 78-1 ¶ 1.)  Mr.

3

Smola also stated in his letter that he had contacted Mr. William Fiorini, Director of the City of Scranton Department of Permits, Licensing and Inspection, to perform a physical inspection of Washington Plaza. *Id.*  Mr. Fiorini conducted a physical inspection of the premises in July of 2006, concluding that Washington Plaza lacked appropriately-rated fire separation walls. (Doc. 78-1 ¶¶ 2-3.)  By letter dated July 13, 2006, Mr. Fiorini informed the Housing Authority that, as a temporary remedy, it must install hard-wired interconnected fire and smoke detectors in all crawl spaces, in the vicinity of all bedrooms, within all bedrooms, on all first floor levels and in the attics of the buildings, within thirty (30) days or else he would have no choice but to condemn the property. (Doc. 78-1 ¶ 3.)  Mr. Fiorini further stated that, as long-term renovations moved forward, the Housing Authority would need to obtain a permit within six (6) months to permanently correct the noted violations and bring Washington Plaza into compliance with the current building codes. *Id.*  On August 23, 2006, Mr. Fiorini sent a second letter to the Housing Authority advising that, because repairs had not been commenced within the prescribed thirty (30) day time period, the Housing Authority had until September 1, 2006, to make the necessary repairs or the City of Scranton would condemn Washington Plaza. (Doc. 78-1 ¶ 5.)  The Housing Authority requested and received a brief extension to the September 1, 2006, condemnation deadline until Friday, November 10, 2006. (Doc. 78-1 ¶ 7.)

On September 1, 2006, the Court granted the parties' joint motion (Doc. 80). In its Amended Order, the Court directed the Housing Authority to: (1) provide a temporary remedy for the exigent health and safety issues related to the lack of fire protection systems at Washington Plaza; (2) see to the expedient relocation of all residents into

suitable, affordable, decent, safe and sanitary replacement housing; and (3) set the framework for negotiation of long-term redevelopment goals for the property as public housing or similarly affordable housing. (Docs. 78 and 80.)

On September 26, 2006, Joseph Pilchesky filed a Motion for Intervention (Doc. 82-1) and Complaint for Declaratory Judgment and Petition for Injunctive Relief (Doc. 83-1). Therein, Mr. Pilchesky complains that it is "an irresponsible waste of taxpayer funds to needlessly relocate residents" of Washington Plaza (Doc. 83-1 p.11), and that, as a taxpayer, he has an economic interest in ensuring that the Housing Authority performs the repairs necessary to avoid the condemnation of Washington Plaza by the City of Scranton (Doc. 82-1 ¶ 44). Mr. Pilchesky cites the Donated or Dedicated Property Act, 53 PA. STAT. ANN. §§ 3381-3386,[1] and the Public Trust Doctrine, as set forth in *Board of Trustees of Philadelphia Museums v. Trustees of University of Pennsylvania*, 96 A. 123 (Pa. 1915),[2] in support of his motion to intervene in this matter.

---

[1] The Donated or Dedicated Property Act provides that lands and buildings donated or dedicated to a political subdivision shall be deemed to be held by the political subdivision, as trustee, for the benefit of the public. 53 PA. STAT. ANN. § 3382. Jurisdiction is vested in the Orphans' Court to resolve disputes involving the use of dedicated property. *See* 53 PA. STAT. ANN. §§ 3384-3385. Donated or dedicated property does not include lands or buildings acquired by a political subdivision by purchase. 53 PA. STAT. ANN. § 3386.

[2] In *Philadelphia Museums*, the Supreme Court of Pennsylvania held, first, that the City of Philadelphia was without the power to convey property which it had previously dedicated to the public, as it held the property in trust for the public's benefit, and, second, that a taxpayer had standing to sue to set aside the City's unlawful conveyance of the dedicated property. 96 A. at 126.

**DISCUSSION**

Rule 24 of the Federal Rules of Civil Procedure provides for a person's intervention into an existing action. There are two distinct types of intervention – intervention as of right, *see* FED. R. CIV. P. 24(a), and permissive intervention, *see* FED. R. CIV. P. 24(b).³

**A. Intervention as of Right**

Rule 24(a) governs an applicant's intervention as of right, providing that:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a)(2). Courts within the Third Circuit apply a four-part test to determine whether an applicant may intervene in an action as of right. An applicant is entitled to intervene as of right when: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987), *cert. denied*, 484 U.S. 947 (1987) (citation omitted). The applicant bears the burden of demonstrating that he has met all four prongs of this test. *See United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n. 9 (3d Cir. 1994). If a party fails on

---

³ The Court notes that Rule 24(c) imposes several procedural requirements with which an applicant must comply before being permitted to intervene as of right or permissively. *See* FED. R. CIV. P. 24(c). First, an applicant must identify the type of intervention sought – intervention as of right, under Rule 24(a), or permissive intervention, under Rule 24(b). *See Gaskin v. Pennsylvania*, 231 F.R.D. 195, 196 (E.D. Pa. 2005). Next, an applicant must file a motion stating the grounds for his proposed intervention. FED. R. CIV. P. 24(c). Lastly, the motion "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." *Id.* Mr. Pilchesky has complied with these procedural requirements.

any one prong of this test, he is not entitled to intervene as of right. *Sch. Dist. of. Phila. v. Pa. Milk Mktg. Bd.*, 160 F.R.D. 66, 68 (E.D. Pa. 1995). The Court's analysis will focus on whether Mr. Pilchesky has a sufficient interest in the litigation.

Intervention as of right under Rule 24(a)(2) requires an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). This legal interest must be direct, as compared to contingent or remote. *Diamond v. Charles*, 476 U.S. 54, 68 (1986); *see also Harris*, 820 F.2d at 601 (stating that an intervenor must cite a legal interest, as opposed to one of a general or indefinite nature). "[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Here, Mr. Pilchesky cites the Donated or Dedicated Property Act, 53 PA. STAT. ANN. §§ 3381-3386, and the Public Trust Doctrine, as set forth in *Board of Trustees of Philadelphia Museums v. Trustees of University of Pennsylvania*, 96 A. 123 (Pa. 1915), in support of his right to intervene. Mr. Pilchesky argues that, as a taxpayer, he has an economic interest in ensuring that the Housing Authority performs the repairs necessary to avoid condemnation. Mr. Pilchesky also complains that it is "an irresponsible waste of taxpayer funds to needlessly relocate residents" of Washington Plaza.

The Court is of the opinion that Mr. Pilchesky's interest as a taxpayer does not entitle him to intervene as of right under Rule 24(a). The interest of a taxpayer in government funds is too "indeterminable, remote, uncertain and indirect" to entitle him to challenge "their manner of expenditure." *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 433 (1952). Indeed, Mr. Pilchesky's grievance as a taxpayer is merely one that he

"suffers in some indefinite way in common with the people generally." *Frothingham v. Mellon*, decided with *Mass. v. Mellon*, 262 U.S. 447, 488 (1923).

Mr. Pilchesky's reliance upon the Donated or Dedicated Property Act ("Act"), 53 PA. STAT. ANN. §§ 3381-3386, and the Public Trust Doctrine, as set forth in *Board of Trustees of Philadelphia Museums v. Trustees of University of Pennsylvania*, 96 A. 123 (Pa. 1915), does not alter the Court's conclusion. Indeed, by its very terms, the Act only applies to lands or buildings donated or dedicated to a political subdivision for the benefit of the public; the Act does not apply to lands or buildings acquired by a political subdivision by purchase. 53 PA. STAT. ANN. §§ 3382 and 3386. Here, Mr. Pilchesky does not allege that Washington Plaza was donated or dedicated to the City of Scranton to be held in trust for the benefit of the public. Rather, Mr. Pilchesky states that Washington Plaza was purchased by the Housing Authority. The fact that federal funds were used to purchase Washington Plaza does not transform it into donated or dedicated property held in trust for the benefit of the public under the Act. As such, the Act and the Public Trust Doctrine do not apply.

Consequently, Mr. Pilchesky does not have a sufficient interest in this matter to entitle him to intervene as of right. Accordingly, the Court will deny Mr. Pilchesky's motion to intervene as of right pursuant to Rule 24(a).

**B. Permissive Intervention**

Rule 24(b) governs permissive intervention, providing that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FED. R. CIV. P. 24(b). The Court has discretion under Rule 24(b) to grant or deny an

application for permissive intervention. *Id.*; *see also Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982).

The requirements that an applicant must meet in seeking permissive intervention are: (1) an independent basis of subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 333, 338-39 (E.D. Pa. 2004); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). As Mr. Pilchesky fails to satisfy the first requirement, the Court will address it alone.

The first requirement for permissive intervention is that the applicant has an independent basis for subject matter jurisdiction. *Linerboard*, 333 F. Supp. 2d at 338; *EEOC*, 146 F.3d at 1046; *Beckman*, 966 F.2d at 473; *see also Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997); *Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 346 (1st Cir. 1989); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1917 (1986 & Supp. 2005). That is, the applicant must have Article III standing. *See* FED. R. CIV. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts").

Here, Mr. Pilchesky, as a taxpayer, clearly lacks Article III standing. *See Mass. v. Mellon*, 262 U.S. 447 (1923) (taxpayer challenging propriety of certain federal expenditures lacked Article III standing); *Doremus*, 342 U.S. 429 (same); *U.S. v. Richardson*, 418 U.S. 166 (dismissing for lack of standing a taxpayer suit challenging the federal government's failure to disclose the expenditures of the Central Intelligence Agency, as the suit rested upon an impermissible generalized grievance); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (dismissing for lack of standing a

citizen-taxpayer suit contending that it was a violation of the Incompatibility Clause, Art. I, § 6, cl. 2, for Members of Congress to hold commissions in the military reserves, as the suit involved only a generalized grievance).

As previously stated, the Donated or Dedicated Property Act and Public Trust Doctrine do not apply because Washington Plaza was acquired by the Housing Authority by purchase. To be sure, even if the Act did apply, Mr. Pilchesky's proper relief is in the Pennsylvania Orphans' Court. *See* 53 PA. STAT. ANN. §§ 3384 and 3385.

Consequently, the Court will deny Mr. Pilchesky's motion for permissive intervention pursuant to Rule 24(b).

## CONCLUSION

In light of the foregoing, the Court finds that Mr. Pilchesky does not satisfy the requirements imposed by Rule 24 of the Federal Rules of Civil Procedure. Accordingly, his motion to intervene will be denied, and his complaint and petition will be dismissed without prejudice.

An appropriate Order will follow.

 November 3, 2006                                      s/ A. Richard Caputo
Date                                                                 A. Richard Caputo
                                                                         United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAREN CORBY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:04-CV-2523 |
| v. | (JUDGE CAPUTO) |
| SCRANTON HOUSING AUTHORITY and its EXECUTIVE DIRECTOR, DAVID E. BAKER, in his official capacity, | |
| Defendants. | |

**ORDER**

**NOW**, this __3rd__ day of November, 2006, **IT IS HEREBY ORDERED** that Joseph Pilchesky's Motion for Intervention (Doc. 82-1) is **DENIED** and his Complaint for Declaratory Judgment and Petition for Injunctive Relief (Doc. 83-1) is **DISMISSED** without prejudice.

    s/ A. Richard Caputo
A. Richard Caputo
United States District Judge